FILED
United States Court of Appeals
Tenth Circuit

**August 6, 2009**

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

CHANTAL MILFORD MASSE;
SANDY LAWRENCE MASSE;
MURIELLE HUSSEN MASSE;
MOUSSA SCOTTY MASSE,

      Petitioners,

v.

ERIC H. HOLDER, JR.,[*]
United States Attorney General,

      Respondent.

No. 08-9561
(Petition for Review)

---

**ORDER AND JUDGMENT**[**]

---

Before **BRISCOE**, **HOLLOWAY**, and **EBEL**, Circuit Judges.

---

Chantal Milford Masse, the lead petitioner, and her children, Sandy

Lawrence Masse, Murielle Hussen Masse, and Moussa Scotty Masse, are citizens

---

[*]     Pursuant to Fed. R. App. P. 43(c)(2), Eric H. Holder, Jr. is substituted for
Michael B. Mukasey as the respondent in this appeal.

[**]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

of Haiti.[1]  They seek review of a final order of removal issued by the Bureau of Immigration Appeals (BIA), affirming a determination by an Immigration Judge (IJ) denying the petitioners' application for asylum, restriction on removal, and relief under the Convention Against Torture (CAT).  This court has previously denied petitioners' motion for stay of voluntary departure and for stay of removal. We have jurisdiction under 8 U.S.C. § 1252(a), and we deny the petition for review.

*Background*

All of the petitioners entered the United States on B-2 visitor visas, albeit on different dates.  Sandy entered on July 6, 2001, then Chantal arrived on August 28, 2004, with Murielle and Moussa entering on September 29, 2004.  All overstayed their visas.  After they were served with a notice to appear, they conceded removability, but requested asylum, restriction on removal, and CAT protection.  Chantal Masse is the lead respondent, with her children being derivative applicants.  Therefore, we do not consider the children's applications separately from Chantal's.  *See Witjaksono v. Holder*, __ F.3d __, 2009 WL 2192657, at *1 n.2 (10th Cir. Jul. 17, 2009).

Petitioners sought asylum based on their relationship to Guy Masse, husband of the lead petitioner and father of the children.  They contend that they

---

[1]     Because all of the petitioners have the same last name, we refer to them individually by their first names.

have suffered past persecution and have a well-founded fear of persecution based on Guy Masse's political opinions and activities in Haiti.

The IJ held a hearing on March 22, 2007, at which the petitioners were represented by counsel. Chantal, Sandy, then aged 19, and Murielle, then aged 15, testified. Chantal explained that Guy was elected mayor of Jacmel, Haiti, the town in which the family lived, and served in that capacity from 1995 to 2000. According to Chantal, he supported the then-president of Haiti, Jean Bertand Aristide, and was a member of the Labalas political party until 2003, when he changed his political affiliation and criticized Aristide and Labalas.

Chantal described an occurrence in 1991 where unidentified men came for Guy, but took her hostage and later released her. She said they came back a month later, so she and the children fled to the mountains for three months. She reported that the attackers had killed a dog and left it on her bed.

Chantal reported no politically motivated incidents between 1991 and 2004. She described a telephone call to her at home on August 13, 2004, in which the caller threatened to come get her. She testified that later that day, several hooded men shot guns in front of her house and then entered her house and destroyed property. She stated that before the men entered the house, she fled with the children out the back gate. Chantal then left her two youngest daughters, Murielle and Moussa, with her sister and flew to the United States. (Daughter Sandy had been in the United States since 2001).

During Chantal's testimony, she produced a police report describing the home invasion dated July 2003, over a year before she claimed the incident occurred. At first, Chantal testified that she went to the courthouse and filed the report. Admin. R. at 225. Later, she stated that it was her sister who filed the report. *Id.* at 238. Furthering the apparent inconsistencies, the report reads as if Guy filed it: "a group of individuals . . . forced the[ir] way into my privat[e] residence . . . and with the help of my neighbor, *I managed to save my life and my family; wife and children.*" *Id.* at 441 (emphasis added). But Chantal testified that it was "not possible" that Guy filed the report. *Id.* at 238.

Chantal and Murielle testified that a short time after the home invasion, a man[2] followed Murielle, then aged 14, after she left school.[3] She was able to elude him by running into the open door of a house. Thereafter, Chantal's sister said she could no longer keep Murielle and Moussa, so she sent them to Chantal in the United States.

Sandy testified that she arrived in the United States in 2001, and stayed with her aunt until she moved to Philadelphia. She said she was afraid that if she

---

[2] The testimony was conflicting as to whether one or two men followed Murielle. Although the IJ stated that the discrepancy in the testimony contributed to his finding that Chantal was not credible, the BIA found this point to be "arguably minor." Admin. R. at 3. Accordingly, we do not consider it.

[3] Murielle stated that she was 15 years of age at the time of the March 2007 hearing, Admin R. at 262, and that she was 14 years of age when she was followed from school in 2004, *id.* at 264.

returned to Haiti she would be kidnaped. Chantal, Sandy, and Murielle all testified that they did not know Guy's whereabouts, that they would like to know where he is, but none had tried to reach him by telephone.

The IJ denied the application for relief, finding that Chantal was not credible for several reasons, including the discrepancies between her testimony about the 2004 home invasion and the police report.

The BIA issued a brief opinion by a single member, upholding the IJ's determination that Chantal was not credible, stating, "[i]n sum, we find that the [IJ] reasonably relied on [petitioners'] submission of a dubious police report in concluding that [they] have not presented a credible claim of past persecution on account of a protected ground." Admin. R. at 3. Petitioners had submitted to the BIA another police report documenting the home invasion that precipitated their flight to the United States. The second police report was dated August 13, 2004. *Id.* at 97. But the second report, like the first, reads as if Guy filed it: "with the help and assistance of the nearest neighbors that we were able to save our life and that of our little kids as well as *my wife*, whereas *I have gone underground.*" *Id.* (emphasis added); *see also id.* ("Signed by GUY MASSE and Mrs. CAROLLE M. NOVEMBRE").

The BIA denied a remand based on this document because petitioners had not explained how the second report had been obtained, why there were two versions of the same report, or why there were discrepancies in the content. The

BIA also affirmed the IJ's ruling that petitioners had not established a well-founded fear of persecution, nor had they met their burden to establish eligibility for restriction on removal or CAT protection. Consequently, the BIA dismissed the appeal.

Petitioners appeal to this court, challenging only the agency's adverse credibility finding and arguing that the record as a whole does not support the finding. They characterize the police report as merely "flawed," and argue that the report cannot supply the sole ground to affirm the agency's credibility determination. In addition, they argue (1) the BIA tacitly rejected the IJ's determination that Chantal's testimony was generally not credible; (2) the agency did not consider Chantal's explanation for the discrepancies–that Chantal's sister filed the report after petitioners had left Haiti–and the agency did not consider the second police report first presented to the BIA; (3) the IJ erred in refusing to hear the corroborating testimony of Moussa; and (4) they were faced with a Hobson's choice of not submitting the police report and thereby risking denial of their claims for lack of corroborating documentation, and submitting the police report and risking an adverse credibility determination.

*Discussion*

A. Eligibility for Relief Requested

A deportable alien may seek to remain in the United States by demonstrating that he qualifies for one or more of three statuses: asylum under 8 U.S.C. § 1158, [restriction on] removal under

8 U.S.C. § 1231(b)(3)(A), or relief under the Convention Against Torture, *see* Pub. L. No. 105-277, § 2242, 112 Stat. 2681, 2681-822-23 (1998); 8 U.S.C. § 1231 (note). To qualify for asylum, an alien must show that [she] has suffered past persecution or has a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. To qualify for restriction on removal, an alien must demonstrate that [her] life or freedom would be threatened in the proposed country of removal because of [her] race, religion, nationality, membership in a particular social group, or political opinion. Protection under the [CAT] does not depend on a showing that mistreatment would be based on any particular characteristic (e.g. race or political opinion), but an alien seeking such relief must show that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.

*Sarr v. Gonzales*, 474 F.3d 783, 788 (10th Cir. 2007) (citations, quotations, and alterations omitted).

## B. Standards of Review

A single BIA member decided petitioners' appeal and issued a brief opinion; therefore, "we review the BIA's decision as the final agency determination and limit our review to issues specifically addressed therein." *Diallo v. Gonzales*, 447 F.3d 1274, 1279 (10th Cir. 2006). Although "we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance . . . , we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). We review the BIA's factual findings for substantial evidence, rejecting them only if "the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Sarr*, 474 F.3d at

788-89 (quotation omitted). We review de novo the BIA's legal conclusions. *Diallo*, 447 F.3d at 1279.

Although the IJ based his finding that Chantal was not credible on several grounds, the BIA affirmed on only one–the discrepancies between her testimony and the police report. Therefore, because the BIA's decision "contains a discernible substantive discussion that stands on its own and does not explicitly incorporate or reference the IJ's reasoning," our review is limited to the BIA's decision. *Sidabutar v. Gonzales*, 503 F.3d 1116, 1123 (10th Cir. 2007) (quotations and alterations omitted).

## C. Credibility

We review for substantial evidence the determination of an asylum applicant's credibility. *Uanreroro*, 443 F.3d at 1204. "[A]n asylum applicant's otherwise credible testimony constitutes sufficient evidence to support an application." *Solomon v. Gonzales*, 454 F.3d 1160, 1165 (10th Cir. 2006). An IJ generally must give specific, cogent reasons for an adverse credibility finding. *Sarr*, 474 F.3d at 789. This court will not evaluate witness credibility or weigh the evidence. *Woldemeskel v. INS*, 257 F.3d 1185, 1189 (10th Cir. 2001).

Petitioners challenge the BIA's finding that Chantal's testimony was not credible based on substantial evidence in the record as a whole. They contend that the BIA's reliance on a single document for this pivotal determination was error.

-8-

We agree that the police report was crucial evidence, but we disagree that the agency's reliance on the discrepancies between the report and Chantal's testimony was error. Chantal testified that the the reason for her flight from Haiti in August of 2004 was the home invasion. The police report was dated July 2003 and reads as if it was made by Chantal's husband, not by Chantal or her sister. When asked why the report showed that it was made in 2003, Chantal testified that after she arrived in the United States, she asked her sister in Haiti "to go get a report for [her]," Admin R. at 227. Further, Chantal testified that it was not possible that her husband made the police report. *Id.* at 238.

Chantal was afforded an opportunity to explain the discrepancies between her testimony and the police report. *See, e.g., id.* at 227 (Question posed to Chantal by her counsel: "Can you explain that, why the document showed 2003?"). She was unable to explain the discrepancies, except to suggest an error in "typing it from [the original] French to English," which the IJ noted was not the case. *Id.* Moreover, although petitioners argue on appeal that the report was "flawed" because it was "from a third-party in a third-world country that keeps precious few records," Aplt. Opening Br. at 37, they have provided no authority for their claim that the police report was inaccurate, except for Chantal's testimony.[4] Accordingly, petitioners have not demonstrated error in the BIA's

[4] Petitioners also argue that "Haiti is not known for its accurate record keeping and adept police work. It is known for corruption and government

(continued...)

reliance on the discrepancies between Chantal's testimony and the police report for an adverse credibility finding.

Petitioners also complain that the BIA failed to credit the parts of Chantal's testimony that were consistent with the police report, i.e., the fact of the home invasion and property destruction, and the fact that the attack was politically motivated based on their relationship to Guy Masse. This argument is essentially a request that this court reweigh the evidence, which we cannot do.

Petitioners next assert that the BIA's credibility determination cannot stand because the IJ refused to hear the testimony of Moussa, who proposed to testify about the home invasion. The IJ ruled that her testimony would be cumulative of that given by Chantal and Murielle, stating that he assumed Moussa's testimony would be the same as that of her mother and sister, a characterization petitioners do not dispute. Therefore, because the IJ assumed Moussa's testimony would duplicate Chantal's and because he determined nevertheless that Chantal was not credible, hearing Moussa's testimony could not have changed the IJ's credibility determination.

Finally, petitioners argue that they had no choice but to submit the "flawed" police report because by not submitting it, they would have risked

---

[4](...continued)
inefficiency." Aplt. Reply Br. at 10 (citing the 2006 State Department country report for Haiti). But their citation to the country report does not address how police reports are made or obtained. Therefore, it is not relevant.

having their claims denied for lack of corroborating documentation.  *See* 8 U.S.C. § 1158(b)(1)(B)(ii) ("Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence.").  As noted above, except for Chantal's testimony, petitioners adduced no evidence to show that the police report was inaccurate.  To the extent they rely on the differences between the first and second police reports to establish that the first report was unreliable, as the BIA noted, they have not explained how the second report was obtained or why it differs from the first report.  Therefore, based on the record as a whole, we conclude that substantial evidence supports the BIA's determination that Chantal's testimony was not credible, and that the agency gave specific, cogent reasons for its determination.[5]

---

[5]    Petitioners present no appellate argument to challenge the agency's determinations that (1) they failed to establish that they had a well-founded fear of persecution on account of a protected ground upon their return to Haiti, (2) they failed to establish that relocation to another part of Haiti would be unreasonable, and (3) they are not entitled to restriction on removal or CAT protection.  Therefore, we do not address them.

*Conclusion*

For the reasons stated above, the petition for review is DENIED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge